UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

CAMERON HARRIS,                        )
                                        )
              Petitioner,               )
                                        )
v.                                      )              No. 2:24-CV-00041-DCLC-CRW
                                        )
UNITED STATES OF AMERICA,               )
                                        )
              Respondent.               )

**MEMORANDUM OPINION**

This matter is before the Court on Petitioner Cameron Harris's Motion under 28 U.S.C.
§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1], the
United States's Response in Opposition [Doc. 4], Mr. Harris's Amended Motion under 28 U.S.C.
§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 7], the
United States's Supplemental Response [Doc. 8], and Mr. Harris's Reply [Doc. 9]. For the
reasons herein, the Court will deny Mr. Harris's motions.

## I. BACKGROUND

In 2021, a federal grand jury indicted Mr. Harris on charges of sexual exploitation of a
minor, in violation of 18 U.S.C. § 2251(a), and attempted sexual exploitation of a minor, in
violation of 18 U.S.C. § 2251(e) (Count One); distributing child pornography, in violation of
18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (Count Two); receiving child pornography, in violation
of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (Count Three); and possessing child pornography, in
violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Count Four). [Indictment, Doc. 3, at 1–3,
No. 2:21-CR-00099-DCLC-CRW]. He entered into a plea agreement with the United States and
pleaded guilty to Count Three, receiving child pornography in violation of § 2252A(a)(2)(A) and

(b)(1). [Plea Agreement, Doc. 31, at 1, No. 2:21-CR-00099-DCLC-CRW]. The plea agreement's

factual basis states:

> In July 2021 law enforcement received a CyberTip lead from the National Center for Missing and Exploited Children (NCMEC). NCMEC received the initial information from Yahoo INC. The NCMEC lead stated that photos and videos were sent from the defendant's email account, dukefancyviking@yahoo.com to his same email account, dukefancyviking@yahoo.com.
>
> The defendant received several photos and videos that contained child pornography. Many of which were images and videos that he downloaded from the internet, but two of the videos where [sic] of a prepubescent female ("the victim") that the defendant produced.
>
> In the [sic] producing the videos the defendant on two different occasions used his cellphone to secretly record the victim using the restroom. In one video he discreetly recorded the victim through the bathroom door that was cracked open. The video showed the victim walking into a bathroom and sitting on the toilet to urinate. The victim finished and turned to the door with her genitals exposed to the camera.
>
> The second video showed the defendant, placing a camera near the toilet in the bathroom. The video captured the defendant standing back from the camera. He then pulled his pants down and urinates. The defendant then left the bathroom. The victim came into the bathroom, pulled her pants down, and briefly shows an exposed buttock. She then sat down on the toilet, to urinate. The video briefly shows her exposed buttock again. She then left the bathroom. The defendant returned and collected the camera immediately after the victim left the bathroom.
>
> During the investigation agents were able to determine that the two videos were made in two different locations. One location was the bathroom in the defendant and his wife's apartment and the other location was a bathroom in the defendant's parents' home.
>
> On July 22, 2021, a search warrant was executed on the defendant's apartment. During the search agents observed the apartment's bathroom and the similarities of the bathroom to one of the produced videos.
>
> During the execution of the search warrant, agents interviewed the defendant. The defendant admitted to producing two videos of the victim urinating in the bathroom at two separate locations. He admitted to using his old cell phone, an iPhone 8 plus, to film the victim in the bathroom at the locations. He also stated he used the iPhone to search for child pornography by using search terms such as "underage boys," "underage girls" and "jailbait." The defendant admitted to using the cell phone to

2

send the acquired child pornography and the videos he produced of the victim to his email account: dukefancyviking@yahoo.com.

The defendant agrees and stipulates that the above-mentioned videos and images of child pornography meet the definition of child pornography pursuant to Title 18, United States Code § 2256(8).

[*Id.* at 2–4]. In exchange for his guilty plea, the United States agreed to dismiss the remaining charges against him in the indictment. [*Id.* at 2].

At sentencing, his total offense level was 33 and his criminal history category was II, which together yielded an advisory guidelines range of 151 to 188 months' imprisonment. [PSR, Doc. 35, ¶ 58, No. 2:21-CR-00099-DCLC-CRW; Statement of Reasons, Doc. 53, at 1, No. 2:21-CR-00099-DCLC-CRW]. The Court sentenced him to 144 months. [J., Doc. 52, at 2, No. 2:21-CR-00099-DCLC-CRW]. He did not appeal his sentence but has now filed motions for post-conviction relief under 28 U.S.C. § 2255, and the United States opposes his motions. Having carefully reviewed and considered his motions and the parties' arguments, the Court is now prepared to rule on them.

## II. LEGAL STANDARD

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). The legal standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir.

3

1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994))). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

"A prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). To obtain relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the [underlying] proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To obtain relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F.3d 503, 505–06 (6th Cir. 1996).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v.*

4

*Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. To discharge this burden, a petitioner must allege sufficient facts showing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

### III. ANALYSIS

In pursuing relief under § 2255, Mr. Harris brings two claims. First, he alleges that his attorney rendered ineffective assistance of counsel because he "was legally innocent" and his attorney failed to argue his innocence by advising him to plead guilty. [Pet'r's Mot. at 4; Pet'r's Am. Mot. at 18]. Specifically, he claims that the evidence was insufficient to enable a jury to find that the videos and images of the minor victim constituted child pornography, and he faults his attorney for not arguing that they were not child pornography, [*id.*], for not "testing the fact that [he] was innocent," [Pet'r's Decl., Doc. 7-3, at 1], and for not performing "any proper research," [*id.*]. Second, he asserts that he entered into his plea agreement unknowingly and involuntarily because the Court did not inform him that he would have to register as a sex offender following his conviction under § 2252A(a)(2)(A). [Pet'r's Mot. at 5]. In response, the United States argues that Mr. Harris's claims lack merit. [United States's Resp. at 3–5; United States's Suppl. Resp. at 1–5].

5

## A. Knowing and Voluntary Guilty Plea

Mr. Harris is correct in arguing that the Court, during the plea colloquy, did not inform him that he would have to register as a sex offender under either the Sex Offender Registration and Notification Act , 34 U.S.C. § 20901 *et seq*., or the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act ("Tennessee Sex Offender Act"), Tennessee Code Annotated § 40-39-201 *et seq*. His guilty plea, however, was knowing and voluntary even without his knowledge of the need to register as a sex offender, as the United States rightly argues. [United States's Resp. at 5].

"[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States*, 397 U.S. 742, 748–50 (1970)). A guilty plea is knowing and voluntary only if a defendant receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quotation omitted). A defendant, however, "need only be aware of the direct consequences of the plea," and a district court "is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002) (quotation omitted).

A collateral consequence of a plea is one that is "beyond the control and responsibility of the district court." *United States v. Rodriguez-Gonzales*, 543 F. App'x 532, 533 (6th Cir. 2013) (quotation omitted). For example, common collateral consequences stem from so-called disenfranchisement statutes, which, as a result of a guilty plea, divest a defendant of his right "to vote, engage in certain businesses, hold public office, or serve as a juror." *Maleng v. Cook*,

490 U.S. 488, 491–92 (1989) (citation omitted). Along these same lines, the Sixth Circuit has held that sex offender registration is merely a collateral consequence of a guilty plea because whether a defendant "must actually register is controlled by state and federal law." *United States v. Cottle*, 355 F. App'x 18, 20 (6th Cir. 2009); *see Leslie v. Randle*, 296 F.3d 518, 522 (6th Cir. 2002) (determining that registration and notification requirements of a state's sexual predator statute were collateral consequences of a conviction).

Because sex offender registration is a collateral consequence of a guilty plea, and not a direct consequence, "district court[s] [are] not required to inform [a defendant] of [registration] for the plea to be valid." *Cottle*, 355 F. App'x at 21; *see United States v. Skaggs*, No. 2:18-CR-51-RLJ-HBG, 2019 WL 6691014, at *7 (E.D. Tenn. Nov. 25, 2019) (stating that the "Sixth Circuit has concluded on several occasions that the requirement to register as a sex offender is a collateral one that need not be disclosed to the defendant in order for a plea to be valid" (quotation omitted)). And the same is true for sex offender registration under the Tennessee Sex Offender Act. *See Ward v. State*, 315 S.W.3d 461, 464 (Tenn. 2010) ("[T]he trial court was not required to advise the defendant of the requirement of sex offender registration because it is a remedial and regulatory measure, and therefore a collateral consequence of the guilty plea."). Mr. Harris's contention that his plea was not knowing or voluntary is therefore without merit and does not warrant relief under § 2255.

### B. Ineffective Assistance of Counsel

Mr. Harris's knowing and voluntary guilty plea vitiates any contention that his attorney was ineffective for failing to argue that the evidence was insufficient to support his conviction. When a petitioner like Mr. Harris challenges his sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test,

a two-pronged test that requires a showing of deficient performance and prejudice.[1] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). *Strickland* applies to an attorney's actions in the guilty-plea context. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Because the record shows that Mr. Harris's guilty plea was knowing and voluntary, and because he provides the Court with no basis to conclude otherwise, he cannot now claim that his attorney acted deficiently by not performing "proper research" and by not "testing his innocence." [Pet'r's Decl. at 1]. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that [may have] occurred prior to the entry of the guilty plea."); *see also United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) (recognizing that "a voluntary and unconditional guilty plea bars any subsequent non-jurisdictional attack on the conviction." (quotation omitted)).

---

[1] To establish deficient performance, a petitioner must show that his counsel, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. And to establish prejudice, a petitioner must show that his counsel's deficient performance was so serious that it deprived him of his fundamental right to due process, *id.*, or in other words, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted). Indeed, "[c]ounsel's performance is strongly presumed to be effective." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quotation omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (citation omitted)). Even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Strickland*, 466 U.S. at 691 (citation omitted).

8

Indeed, Mr. Harris stipulated, under oath, that his plea agreement's factual basis was true and correct and that the United States, at trial, would be able to prove all the facts in the factual basis. [Plea Hr'g Tr., Doc. 38, at 12:24–25, 13:1–6, No. 2:21-CR-00099-DCLC-CRW]. In that factual basis, he admitted that he "produc[ed] two videos of the victim urinating in the bathroom at two separate locations," "us[ed] his old cell phone, an iPhone 8 plus, to film the victim in the bathroom at the locations," and "us[ed] the cell phone to send the acquired child pornography and the videos he produced of the victim to his email account." [Plea Agreement at 3]. And although he now argues that the videos and images of the minor did not constitute child pornography, and that his attorney was ineffective for not raising this same argument, he admitted that those videos and images "meet the definition of child pornography pursuant to Title 18, United States Code § 2256(8)." [*Id.* at 4]. *See Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) ("It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement.").

His "[s]olemn declarations in open court carry a strong presumption of verity," and his declarations, as well as the Court's findings, "constitute a formidable barrier in any subsequent collateral proceeding." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), *see Marks v. Davis*, 504 F. App'x 383, 386 (6th Cir. 2012) (stating that "the plea transcript itself carries great weight" (citing *id.*)); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [during a plea colloquy], 'the defendant is bound by his statements in response to that court's inquiry.'" (quotation omitted)). In fact, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

9

Mr. Harris's sworn admissions as to the truth and accuracy of the facts in his factual basis, and the knowing and voluntary nature of his guilty plea, therefore preclude him from arguing that the evidence is inadequate to support his conviction and that he is innocent. *See Luster v. United States*, 168 F.3d 913, 916 (6th Cir. 1999) ("[The defendant's] plea serves as an admission that he is not innocent of the crimes charged." (citation omitted)). They also bar him from arguing that his attorney was ineffective for not contesting the evidence against him. *See Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument."); *see also Winans v. United States*, No. 17-1535, 2017 WL 8315838, at *3 (6th Cir. Oct. 20, 2017) ("This ineffective-assistance claim, similar to the preceding ineffective-assistance claim, is foreclosed by [petitioner's] knowing and voluntary guilty plea[.]"); *Brittian v. United States*, Nos. 1:08–cv–169, 1:04–cr–150, 2011 WL 1768864, at *9 (E.D. Tenn. May 9, 2011) ("[The petitioner's] plea was knowing and voluntary and his ineffective assistance of counsel claim regarding his plea fails."); *Cordell v. United States*, Nos. 4:05-cv-47, 4:00-cr-13-01, 2008 WL 4568076, at *9 (E.D. Tenn. Oct. 14, 2008) ("[T]he ineffective assistance of counsel claim fails because [petitioner's plea was] knowing and voluntary[.]"); *see also Villa-Rodriguez v. United States*, No. 2:15-cv-02690, 2016 WL 6277861, at *4, 6 (S.D. Ohio Oct. 27, 2016) ("Petitioner asserts that his trial attorney performed in a constitutionally ineffective manner . . . . The record belies this assertion. . . . Based on this record, Petitioner will not now be heard to deny the facts to which he once agreed under oath."); *Dallas v. United States*, Civ. No. 12-15495, Crim. No. 10-20488, 2013 WL 3448249, at *4 (E.D. Mich. July 9, 2013) ("Petitioner's ineffective assistance claim must fail because his attorney's assistance regarding his plea . . . is not objectively unreasonable given the evidentiary basis for his guilty plea."); *Harrison v. Bauman*, No. 2:10–cv–188, 2012 WL 3206044, at *2 (W.D. Mich.

Aug. 7, 2012) ("The Sixth Amendment claim of ineffective assistance of counsel is properly denied. [The petitioner] entered a knowing and voluntary plea of guilty[.]").

In short, Mr. Harris's claim of ineffective assistance of counsel can prevail only if he perjured himself at his plea hearing, and "[a] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Vargas-Gutierrez*, 464 F. App'x 492, 496 (6th Cir. 2012) (quoting *United States v. Shah*, 453 F.3d 520, 523 (D.C. Cir. 2006)). Mr. Harris has no such compelling explanation—only a meritless argument that his plea was unknowing and involuntary because he was allegedly unaware of the requirement that he would have to register as a sex offender.

Although he argues—for the first time in his reply brief—that he admitted the videos and images of the minor victim constituted child pornography only because his attorney had wrongly "informed him that his conduct met the required elements," [Pet'r's Reply at 3], the Court not only recited the elements of the offense to him but also asked him if he understood what the United States would have to prove to convict him under those elements. [Pl. Hr'g Tr. at 21:13–22]. Under oath, he stated that he understood. [*Id.* at 21:23]. He does not now claim that the Court's recitation of the elements was inaccurate, and because he received an accurate narration of them, even if not from his attorney's own mouth, he suffered no prejudice. *See Davis v. United States*, Nos. 1:12–CV–329–CLC, 1:02–CR–151–CLC–WBC, 2015 WL 6510406, at *5 (E.D. Tenn. Oct. 27, 2015) ("Because the Court finds [the petitioner] was adequately informed about . . . the elements of the charged offense in . . . [the] Rule 11 colloquy, Petitioner cannot demonstrate that he incurred any prejudice as a result of counsel's alleged failure to brief him on those issues."); *Torres-Lopez v. United States*, Nos. 1:03–cr–163–1, 1:09–cv–103,

11

2012 WL 4510923, at *7 (E.D. Tenn. Sept. 28, 2012) ("Because Petitioner here was advised of the elements of the offense [by the Court]" and "admit[ted] he was aware of the . . . requirements of the offense . . . the Court cannot find Petitioner has proven the prejudice prong of *Strickland*.").

Mr. Harris also cannot establish prejudice because he fails to show that "there is a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "The test is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Although he alleges that he "would have never taken the plea agreement to a charge he was innocent of," [Pet'r's Am. Mot. at 27], he does little more with this skeletal allegation than echo the relevant legal standard. His mere recitation of *Strickland*'s standard is not enough to make a viable showing of prejudice. *See Shimel v. Warren*, 838 F.3d 685, 698 (6th Cir. 2016) ("[A] petitioner 'cannot make that showing [of prejudice] merely by telling [the court] now that []he would have gone to trial then if []he had gotten different advice.'" (second alteration in original) (quotation omitted)); *see also Moore v. United States*, 676 F. App'x 383, 385 (6th Cir. 2017) ("Echoing the *Strickland* standard, petitioner argues that but for counsel's erroneous advice, he would not have pleaded guilty. Why exactly, petitioner does not enlighten us.").

Besides, he makes no allegation—much less a showing—that his rejection of the plea agreement would have been rational under the circumstances, and the wisdom of any argument that he would have acted rationally by rejecting it is dubious at best. He received substantial benefits from the plea agreement, not least among which was the dismissal of the other charges

in the indictment, including the charge of sexual exploitation of a minor under § 2251(a) and (e). If he had opted for trial on this charge and been convicted—a distinct possibility in light of his admission that the facts in the factual basis are true and accurate and that the United States would be able to prove them at trial—he would have received a statutory mandatory minimum sentence of fifteen years. 18 U.S.C. § 2251(e). That sentence by itself would have exceeded the 144-month sentence that he is currently serving. The Court, therefore, cannot conclude his rejection of the plea agreement would have been rational under the circumstances. *See Ellis v. United States*, No. 19-6047, 2020 WL 1272625, at *3 (6th Cir. Jan. 30, 2020) ("The benefits that [the petitioner] received by accepting the [plea] agreement outweighed the risks that he faced by rejecting it, and he has not shown that 'a decision to reject the plea bargain would have been rational.'" (quoting *Padilla*, 559 U.S. at 372)).

In sum, Mr. Harris fails to show that his attorney rendered ineffective assistance of counsel, but even if he was ineffective, he fails to establish that he endured prejudice, having made no showing of a reasonable probability that he would have rejected the plea agreement if not for his attorney's alleged errors. His claim of ineffective assistance of counsel is therefore without merit, and he is not entitled to the extraordinary remedy of § 2255 relief.

### C. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability, which is necessary for Mr. Harris to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claims on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000). Having addressed the merits of Mr. Harris's claims, the Court does not conclude that reasonable jurists would find that its rejection of his claims is debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Mr. Harris.

## IV.  CONCLUSION

As the petitioner under § 2255, Mr. Harris fails to meet his burden of establishing that his conviction and sentence are in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. His Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1] and his Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 7] are therefore **DENIED**. The Court will enter an order consistent with this opinion.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge

14